**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Henry Bell, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| PepsiCo, Inc. | |
| Defendant. | |

Plaintiff Henry Bell ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant PepsiCo, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on his personal knowledge.

<u>**NATURE OF THE ACTION**</u>

1.      Defendant formulates, manufactures, advertises, and sells its Ceres "100% Juice Blend" juices (the "Products")[1] throughout the United States, including in California.  Defendant markets its Products in a systematically misleading manner by conspicuously misrepresenting on the labels of the Products that they: (1) are made from a "100% Juice Blend" and (2) contain "No Preservatives." Defendant reinforces these misrepresentations by adding vignettes and the names

---

[1] The Products include all flavors of Defendant's lines of products as depicted on its website: (1) "Guava Juice"; (2) "Litchi Juice"; (3) "Mango Juice"; (4) "Medley of Fruits Juice"; (5) "Papaya Juice"; (6) "Passion Fruit Juice"; (7) "Peach Juice"; (8) "Pear Juice."
https://ceresjuices.com/shop-ceres-fruit-juice/ (last accessed September 29, 2023)

of the fruits on the labels.

2.      Unbeknownst to consumers, however, the Products all share a common ingredient that belies their "100% Juice Blend" and "No Preservatives" representations: ascorbic acid—a well-documented synthetic ingredient.

3.      Defendant's most recent labeling of its Products, along with their respective ingredient panels, are depicted below:

















---

[2] The Products share virtually identical back panels which contain the "No Preservatives" representation.

| PASSION FRUIT | GUAVA |
|---|---|
| INGREDIENTS: PEAR JUICE (WATER, PEAR CONCENTRATE), PASSION FRUIT JUICE (WATER, PASSION FRUIT CONCENTRATE), ASCORBIC ACID (VITAMIN C) | INGREDIENTS: PEAR JUICE (WATER, PEAR CONCENTRATE), GUAVA PUREE, ASCORBIC ACID (VITAMIN C) |
| **MANGO** | **MEDLEY OF FRUITS** |
| INGREDIENTS: PEAR JUICE (WATER, PEAR CONCENTRATE) MANGO PUREE, ASCORBIC ACID (VITAMIN C) | INGREDIENTS: PEAR JUICE (WATER, PEAR CONCENTRATE), GUAVA PUREE, PINEAPPLE JUICE (WATER, PINEAPPLE CONCENTRATE), PAPAYA PUREE, MANGO PUREE, PEACH PUREE, PASSION FRUIT JUICE (WATER, PASSION FRUIT CONCENTRATE), ASCORBIC ACID (VITAMIN C) |
| **PEACH** | **LITCHI** |
| INGREDIENTS: PEAR JUICE (WATER, PEAR CONCENTRATE), PEACH PUREE, ASCORBIC ACID (VITAMIN C) | INGREDIENTS: PEAR JUICE (WATER, PEAR CONCENTRATE), LITCHI PUREE, ASCORBIC ACID (VITAMIN C) |
| **PEAR** | **PAPAYA** |
| INGREDIENTS: PEAR JUICE (WATER, PEAR CONCENTRATE), PEAR PUREE, ASCORBIC ACID (VITAMIN C) | INGREDIENTS: PEAR JUICE (WATER, PEAR CONCENTRATE), PAPAYA PUREE, ASCORBIC ACID (VITAMIN C) |

4.      Defendant's deceptive conduct is further underscored by the fact that other fruit juice products labeled with "100% juice" representations do not, in fact, contain any additional non-juice ingredient. One of these competing brands is depicted below, by way of illustration:



**Ingredients:**
100% Content of Organic NFC
Apricot Juice and Single
Strength Pulp. Not From
Concentrate.



5.    Furthermore, other competitor brands that do include additional ingredients to

their "100 juice" products disclose the presence of those ingredients in their principal display

panels. As explained in greater detail below, disclosing these additional ingredients is not just

industry practice, it is required by law. A sample of properly labeled "100% juices" containing

additional ingredients are depicted below, by way of illustration:

///

///

///

///






6.     As a result of its deceptive conduct, Defendant is, and continues to be, unjustly enriched at the expense of its consumers.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

8.     This Court has personal jurisdiction over Defendant PepsiCo, Inc. because Defendant PepsiCo, Inc., is incorporated and maintains its principal place of business in New York. This Court also has personal jurisdiction over Defendant because it conducts and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## PARTIES

10.     Plaintiff Henry Bell is a citizen of California, who resides in Lawndale, California. Plaintiff purchased Defendant's Products (including, but not limited to, Defendant's "Mango" Product) for his personal use on various occasions within the applicable statute of limitations, with his most recent purchases taking place on or about June of 2023. Plaintiff Bell made these purchases from local grocery stores located in Lawndale and Manhattan Beach, California. Prior to making his purchases, Plaintiff Bell saw that the Products were labeled and marketed as being made from a "100% Juice Blend" with "No Preservatives." Plaintiff Bell

relied on Defendant's representations when he decided to purchase the Products over comparable products that did not make those claims. Plaintiff Bell saw Defendant's representations prior to and at the time of his purchases and understood them as a representation and warranty that the Products were exclusively made from a "100% Juice Blend" that contained "No Preservatives." Plaintiff Bell relied on these representations and warranties in deciding to purchase the Products. Accordingly, those representations and warranties were part of the basis of his bargains, in that he would not have purchased the Products on the same terms had he known that those representations were not true. Furthermore, in making his purchases, Plaintiff Bell paid a substantial price premium due to Defendant's false and misleading representations concerning the Products. Plaintiff Bell, however, did not receive the benefit of his bargains because those representations were not, in fact, true.

11.     Defendant PepsiCo, Inc., is a corporation organized under the laws of North Carolina with its headquarters at 700 Anderson Hill Road, Purchase, New York 10577. Defendant, through its wholly-owned subsidiary Ceres Fruit Juices (Pty) Ltd,[3] manufacturers, packages, labels, advertises, markets, distributes and/or sells the Products in New York and throughout the United States.

## **GENERAL ALLEGATIONS**

### *Overview of Defendant's Deceptive Business Practices*

12.     The global juice market has experienced a significant burst of growth as health-oriented consumers have turned to natural juices due to their rich nutritional content: which

---

[3] PepsiCo, Inc., Annual Report (Form 10-K) (Sep. 2, 2023) pg.6, found at https://www.sec.gov/Archives/edgar/data/77476/000007747623000007/pep-20221231.htm ; *see also* PepsiCo, Inc., Annual Report (Form 10-K) (EX-21), (Sep. 2, 2023), found at https://www.sec.gov/Archives/edgar/data/77476/000007747623000007/pepsico202210-kexhibit21.htm

includes essential vitamins, minerals, and antioxidants. These perceived health benefits, along with the increasing aversion toward the synthetic ingredients found in carbonated sodas, have made fruit juices top contenders in the beverage industry.[4] Indeed, recent consumer surveys indicate that approximately "half of Americans say they seek out natural flavors at least some of the time," with most of these respondents looking for products that are "not artificial or synthetic."[5] In fact, the second largest contributing factor toward consumer confidence regarding the safety of food is that it be labeled as "Having No Artificial Ingredients."[6]

13.     In response to this rise in consumer demand, food and beverage manufacturers pivoted by producing fruit juices *en masse*. Despite this, however, many of these so-called "fruit juices" are merely shadows of regular sodas: containing the same high sugar content and plethora of synthetic ingredients. Defendant's Products falls squarely within this gamut of deceptive conduct.

14.     By labeling its Products as being made with a "100% Juice Blend" with "No Preservatives," Defendant deceptively attempts to distinguish itself from other fruit juices that do contain additional synthetic preservatives. Defendant's deceptive marketing campaign helped place the Products on the front rows of the shelves of grocery stores throughout the country and online marketplaces. As a result, Defendant has enjoyed a virtual monopoly, and commanded a

---

[4] IMARC, *Fruit Juice Market Report by Product Type (100% Fruit Juice, Nectars, Juice Drinks, Concentrates, Powdered Juice, and Others), Flavor (Orange, Apple, Mango, Mixed Fruit, and Others), Distribution Channel (Supermarkets and Hypermarkets, Convenience Stores, Specialty Food Stores, Online Retail, and Others), and Region 2023-2028*, https://www.imarcgroup.com/fruit-juice-manufacturing-plant (last accessed September 29, 2023).

[5] International Food Information Council, *IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients* (June 17, 2021), https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/ (last accessed September 29, 2023).

[6] International Food Information Council, *2023 Food & Health Survey* (May 23, 2023) at 73, https://foodinsight.org/2023-food-and-health-survey/ (last accessed September 29, 2023).

substantial premium, over other "100% juice" beverages with added ingredients. *See supra*, ¶5.

***Overview of Ascorbic Acid and Defendant's "No Preservatives" Claims***

15.    Ascorbic acid (also known as Vitamin C) is a popular food additive used for its flavoring, nutritional fortification, and preserving functions. Although ascorbic acid can be derived from natural sources such as citrus fruits, doing so is prohibitively expensive for companies that require the ingredient in large quantities.[7] As such, most ascorbic acid is commercially produced, and manufactured, through extensive chemical processing.[8]  In fact, the USDA found that "all commercial ascorbic acid [is] synthetically derived."[9] The reason for this is that, "[w]hile ascorbic acid is naturally produced … its reactive nature makes isolation of the substance from natural sources challenging, which has resulted in all commercial ascorbic acid being synthetically derived."[10]

16.    Ascorbic acid functions as an antioxidant that helps prevent microbial growth and oxidation in food products, thereby preserving their color and freshness. Tellingly, the Food and Drug Administration ("FDA") lists "ascorbic acid" under the heading "Subpart D - Chemical Preservatives." 21 C.F.R. § 182.3013. The FDA also regulates the use of ascorbic acid in the formulation of wine and juice "to prevent oxidation of color and flavor components of juice," and it "may be added to grapes, other fruit (including berries), and other primary wine making materials or to the juice of such materials." 27 C.F.R. § 24.246. The FDA also regulates ascorbic acid in the formulation of canned juices. *See e.g.*, 21 C.F.R. § 145.110(a)(2)(viii) (permitting

---

[7] Dolchem Quality Chemicals, *Ascorbic Acid Journey: From Production to Applications*, available at: https://www.dolchem.com/blog/ascorbic-acid-journey-from-production-to-applications/ (last accessed September 29, 2023).
[8] *Id.*
[9] U.S. Dep't of Agric., USDA National Organic Program, *Ascorbic Acid* 3 (2019), https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf (last accessed September 29, 2023).
[10] *Id.*

ascorbic acid to be used in "Canned apple sauce" as "as an antioxidant preservative[.]").
Furthermore, the FDA classifies and identifies ascorbic acid as a preservative in its Overview of
Food Ingredients, Additives, and Colors, on the FDA's website and provides examples of how
ascorbic acid is used as a preservative in beverages and other products.[11] The FDA's view of this
matter is further bolstered by a Warning Letter that it sent to Chiquita Brands International, Inc.,
indicating that Chiquita's "Pineapple Bites" products were misbranded within the meaning of
section 403(k) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 343(k), because "they contain
the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these
preservatives with a description of their functions."[12]

17. Although Defendant identifies ascorbic acid as a source of vitamin C, based on
the FDA's extensive regulations, the inclusion of ascorbic acid also has a preservative effect on
the juice component of the Products. This is particularly true given that ascorbic acid can
function as a preservative even when used in low amounts.[13]

18. In any event, even if the Products' ascorbic acid does not, in fact, function as a
preservative in the Products, it nonetheless qualifies as a preservative given that it has the
capacity or tendency to preserve food products. *See* 21 C.F.R. §101.22(a)(5) (defining
preservatives as "any chemical that, when added to food, *tends* to prevent or retard
deterioration,") (emphasis added); *see also* Merriam-Webster's Dictionary (defining

---

[11] https://public4.pagefreezer.com/browse/FDA/31-12-
2022T07:59/https://www.fda.gov/food/food-ingredients-packaging/overview-food-ingredients-
additives-colors (last accessed September 29, 2023).

[12] FDA, *Warning Letter to Chiquita Brands International, Inc. and Fresh Express Incorporated*
(Oct. 6, 2010), available at
https://wayback.archiveit.org/7993/20170112194314/http://www.fda.gov/ICECI/EnforcementAc
tions/WarningLetters/2010/ucm228663.htm (last accessed September 29, 2023).

[13] *See* Doores, S., 1993. *Organic acids*. In: Davidson, P.M., et al. (Eds.), *Antimicrobials in Food*
CRC Press, pp. 95-136. http://base.dnsgb.com.ua/files/book/Agriculture/Foods/Antimicrobials-
in-Food.pdf (last accessed September 29, 2023).

"preservative" as "something that preserves or has the power of preserving.");[14] Oxford English Dictionary (defining "preservative" as "[t]ending to preserve or capable of preserving") (emphasis added).[15]

19.    Based on the foregoing, Defendant's use of ascorbic acid in its Products renders its "No Preservatives" representations false and misleading.

***Defendant's False "100% Juice Blend" Claims***

20.    In addition to its "No Preservatives" misrepresentations, Defendant compounds the misrepresentation by claiming that the Products are made from a "100% Juice Blend." As discussed above, however, all of Defendant's Products contain "ascorbic acid" — a non-juice food additive. As such, Defendant's "100% Juice" representations are literally false.

21.    To make matters worse, Defendant's "100% Juice Blend" misrepresentations also run afoul of pertinent FDA regulations. Specifically, the FDA provides that:

> "If the beverage contains 100 percent juice and also contains non-juice ingredients… [and] the 100 percent juice declaration appears on a panel of the label that does not also bear the ingredient statement, it must be accompanied by the phrase "with added — — — — — ," the blank filled in with a term such as "ingredient(s)," "preservative," or "sweetener," as appropriate (e.g., "100% juice with added sweetener")[.]" 21 C.F.R. § 101.30(b)(3).

Defendant's Products are amongst the only juices in the market that fail to comply with this FDA regulation. Consumers are accustomed to purchasing properly labeled juices. As such, since Defendant fails to disclose that its "100 Juice Blend" also contains an added ingredient—as

---

[14] *Preservative*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/preservative?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last accessed September 29, 2023).
[15] *Preservative*, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=preservative (last accessed September 29, 2023).

disclosed by its major FDA-compliant competitors, *supra*, ¶ 5—they are further misled into believing that the Products do not contain any non-juice ingredients. Although Plaintiff does not seek to enforce the FDA, Defendant's non-compliance illustrates its misconduct.

22.     The global sale of healthy food products is estimated to be $4 trillion dollars and is forecasted to reach $7 trillion by 2025.[16] Based on the foregoing, consumers are willing to purchase and pay a premium for healthy and clean food items: like the deceptively advertised Products.

23.     Defendant's misleading and deceptive practices proximately caused harm to Plaintiff and the proposed class members who suffered an injury in fact and lost money or property as a result of Defendant's deceptive conduct.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action on behalf of himself and all other similarly situated persons pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), and (b)(3). Specifically, the Classes are defined as:

25.     **Nationwide Class:** All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

26.     **California Subclass:** All persons residing in California who, during the maximum period of time permitted by the law, purchased Defendant's Products primarily for personal, family or household purposes, and not for resale.

27.     The Classes do not include (1) Defendant, its officers, and/or its directors; or (2)

---

[16] Global Wellness Institute, *The Global Wellness Economy Stands at $4.4 Trillion Amidst the Disruptions of COVID-19; Is Forecast to Reach $7 Trillion by 2025*, https://www.hospitalitynet.org/news/4108643.html (last accessed September 29, 2023).

the Judge to whom this case is assigned and the Judge's staff.

28.    Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

29.    ***Community of Interest***: There is a well-defined community of interest among members of the Classes, and the disposition of the claims of these members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

30.    ***Numerosity***: While the exact number of members of the Classes is unknown to Plaintiff at this time and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions. Members of the Classes may also be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

31.    ***Existence and predominance of common questions of law and fact***: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes. These common legal and factual questions include, but are not limited to:

(a)    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

(b)    Whether Defendant fraudulently induced Plaintiff and the members of the Classes into purchasing the Products;

(c)    Whether Plaintiff and the members of the Classes have suffered damages as a result of Defendant's actions and the amount thereof;

(d)    Whether Plaintiff and the members of the Classes are entitled to statutory

damages; and

  (e)  Whether Plaintiff and the members of the Classes are entitled to attorney's fees and costs.

  32.  ***Typicality:*** The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

  33.  ***Adequacy***: Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Classes because he has no interests which are adverse to the interests of the members of the Classes. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained skilled and experienced counsel.

  34.  Moreover, the proposed Classes can be maintained because they satisfy both Rule 23(a) and 23(b)(3) because questions of law or fact common to the Classes predominate over any questions affecting only individual members and a Class Action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

  (a)  The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

  (b)  If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would cause members of the Classes to seek to redress their claims other than through the procedure of a class action; and

(c)     Absent a class action, Defendant likely will retain the benefits of its wrongdoing, and there would be a failure of justice.

## CAUSES OF ACTION

### COUNT I
### Violation of State Consumer Protection Statues[17]
### (On Behalf of Plaintiff and the Nationwide Class)

35.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

36.     The Consumer Protection Statutes of the Nationwide Class members prohibit the use of deceptive, unfair, and misleading business practices in the conduct of trade or commerce.

37.     By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices by misrepresenting that the Products are made from a "100% Juice Blend" containing "No Preservatives." Despite those representations, however, the

---

[17] While discovery may alter the following, Plaintiff asserts that the states with similar consumer fraud laws under the facts of this case include but are not limited to: Alaska Stat. § 45.50.471, et seq.; Ariz. Rev. Stat. §§ 44-1521, et seq.; Ark. Code § 4-88-101, et seq.; Cal. Bus. & Prof. Code § 17200, et seq.; Cal. Civ. Code §1750, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Colo. Rev. Stat. Ann. § 6-1-101, et seq.; Conn. Gen Stat. Ann. § 42- 110, et seq.; 6 Del. Code § 2513, et seq.; D.C. Code § 28-3901, et seq.; Fla. Stat. Ann.§ 501.201, et seq.; Ga. Code Ann. § 10-1-390, et seq.; Haw. Rev. Stat. § 480-2, et seq.; Idaho Code. Ann. § 48-601, et seq.; 815 ILCS 501/1, et seq.; Ind. Code § 24-5-0.5-2, et seq.; Kan. Stat. Ann. § 50-623, et seq.; Ky. Rev. Stat. Ann. § 367.110, et seq.; LSA-R.S. 51:1401, et seq.; Me. Rev. Stat. Ann. Tit. 5, § 207, et seq.; Md. Code Ann. Com. Law, § 13-301, et seq.; Mass. Gen Laws Ann. Ch. 93A, et seq.;  Mich. Comp. Laws Ann. § 445.901, et seq.; Minn. Stat. § 325F, et seq.; Mo. Rev. Stat. § 407, et seq.; Neb. Rev. St. §§ 59-1601, et seq.; Nev. Rev. Stat. § 41.600, et seq.; N.H. Rev. Stat. § 358-A:1, et seq.; N.J. Stat. Ann. § 56:8, et seq.; N.M. Stat. Ann. § 57-12-1, et seq.; N.Y. Gen. Bus. Law § 349, et seq.; N.C. Gen Stat. § 75-1.1, et seq.; N.D. Cent. Code § 51-15, et seq.; Ohio Rev. Code Ann. § 1345.01, et seq.; Okla. Stat. tit. 15 § 751, et seq.; Or. Rev. Stat. § 646.605, et seq.; 73 P.S. § 201-1, et seq.; R.I. Gen. Laws § 6-13.1- 5.2(B), et seq.; S.C. Code Ann. §§ 39-5- 10, et seq.; S.D. Codified Laws § 37-24-1, et seq.; Tenn. Code Ann. § 47-18-101, et seq.; Tex. Code Ann., Bus. & Con. § 17.41, et seq.; Utah Code. Ann. § 13-11-175, et seq.; 9 V.S.A. § 2451, et seq.; Va. Code Ann. § 59.1-199, et seq.; Wash. Rev. Code § 19.86.010, et seq.; W. Va. Code § 46A, et seq.; Wis. Stat. § 100.18, et seq.; and Wyo. Stat. Ann. § 40-12-101, et seq.

Products contain "ascorbic acid"— a non-juice synthetic preservative.

38.    The foregoing deceptive acts and practices were directed at consumers.

39.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the nature and value of the Products.

40.    As a result of Defendant's deceptive practices, Plaintiff and the Nationwide Class members suffered an economic injury because they would not have purchased (or paid a premium for) the Products had they known the veracity of Defendant's misrepresentations.

41.    On behalf of himself and the Nationwide Class members, Plaintiff seeks to recover their actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

### COUNT II
**Violation of California's False Advertising Law,
Cal. Bus. & Prof. Code § 17500, *et seq*.
(On Behalf of Plaintiff and the California Subclass)**

42.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

43.    The FAL makes it "unlawful for any person…to make or disseminate or cause to be made or disseminated before the public in this state, … [in] any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or those services, professional or otherwise, or … performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

44.    Defendant committed acts of false and misleading advertising, as defined by the FAL, by using statements to promote the sale of its Products by misrepresenting that the Products are made from a "100% Juice Blend" containing "No Preservatives." Despite those

18

representations, however, the Products contain "ascorbic acid"— a non-juice synthetic preservative.

45.    Defendant knew or should have known that its advertising claims are misleading and/or false.

46.    Defendants knew or should have known, through the exercise of reasonable care, that its representations were false and misleading and likely to deceive consumers and cause them to purchase Defendant's Products.

47.    Defendants' wrongful conduct is ongoing and part of a general practice that is still being perpetuated and repeated throughout the State of California and nationwide.

48.    As a result of Defendant's wrongful conduct, Plaintiff and the California Subclass members lost money in an amount to be proven at trial. Plaintiff and the California Subclass members are therefore entitled to restitution as appropriate for this cause of action.

49.    Plaintiff and the California Subclass members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

**COUNT III**
**Violation of California's Consumer Legal Remedies Act ("CLRA"),**
**California Civil Code § 1750, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

50.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

51.    Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not

have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

52.    Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

53.    Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

54.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

55.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

56.    On September 29, 2023, Plaintiff notified Defendants in writing, by certified mail, of the violations alleged herein and demanded that Defendants remedy those violations pursuant to Cal. Civ. Code § 1782.

57.    Plaintiff and the California Subclass members presently seek only injunctive relief under this Count. If Defendant fails to remedy the violations alleged herein within 30 days of receipt of Plaintiff's notice, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages pursuant to the CLRA.

**COUNT IV**
**Violation of California's Unfair Competition Law, ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

58.    Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

59.    The UCL broadly prohibits acts of "unfair competition," including any "unlawful,

unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

60.    Defendants' acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq.*

61.    Defendant has violated the UCL's proscription against engaging in **Unlawful Business Practices** as a result of its violations of the CLRA and FAL, as described above.

62.    Specifically, Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers. In addition, Defendant has committed unlawful business practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully above.

63.    Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices**. Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200 *et seq*. in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

64.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

65.    Defendant has further violated the UCL's proscription against engaging in **Fraudulent Business Practices**. Defendant's claims, nondisclosures and misleading statements with respect to the Products, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

66.    Plaintiff and the other California Subclass members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Products.

67.    There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the true nature of the Products.

68.    Plaintiff and the other California Subclass members had no way of reasonably knowing that the Products that they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

69.    The gravity of the consequences of Defendant's conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other California Subclass members.

70.    Pursuant to California Business and Professional Code § 17203, Plaintiff and the California Subclass members seek an order of this Court that includes, but is not limited to, an order requiring Defendant to (a) provide restitution to Plaintiff and the other California Subclass members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff and the California Subclass members' attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

(b)     For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

(c)     For compensatory, statutory and punitive damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief; and

(f)     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated September 29, 2023                         Respectfully submitted,

**GUCOVSCHI ROZENSHTEYN, PLLC**

By:  /s/ Adrian Gucovschi
        Adrian Gucovschi, Esq.

Adrian Gucovschi
140 Broadway, Suite 4667
New York, NY 10005
Tel: (212) 884-4230
adrian@gr-firm.com

*Counsel for Plaintiff and the Classes*